J-S63019-15 & J-S63020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT MILAZZO | |
| Appellant | No. 555 EDA 2015 |

Appeal from the Judgment of Sentence September 15, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000126-2014

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT MILAZZO | |
| Appellant | No. 557 EDA 2015 |

Appeal from the Judgment of Sentence September 15, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000975-2014

BEFORE: DONOHUE, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.: **FILED DECEMBER 21, 2015**

Appellant, Robert Milazzo, appeals from the September 15, 2014 aggregate judgment of sentence of 36 to 72 months' imprisonment imposed following his convictions for two counts each of insurance fraud, criminal conspiracy, and false reports and one count each of criminal use of

communication facility, unsworn falsification to authorities, and obstruction of administration of law.[1]  After careful review, we affirm.

We summarize the relevant factual and procedural background of this case as follows.   In October or November 2013, Appellant moved into 9493 Juniper Drive in Tobyhanna, Pennsylvania, the rented home of his cousin, Harley DiMartino, and Jennifer Sherwood, DiMartino's girlfriend.  N.T., 7/8/14, at 109-110.  On December 12, 2013, Appellant purchased a renter's insurance policy through American Strategic Insurance Corporation (ASI).  *Id.* at 172-174.  Sherwood and DiMartino left the home a day or two before Christmas to visit family over the holiday season.  *Id.* at 111.  Brenda Spagnola, a friend of Sherwood, agreed to take care of Sherwood's cats while the couple were away for the holidays.  *Id.* at 35, 112.  On December 27, 2013, Appellant spoke with Spagnola three times on the phone.  *Id.* at 35.  Appellant told Spagnola, during the second phone conversation, that there was a notice on the door of his residence to vacate the premises within ten days due to nonpayment of rent.  *Id.* at 37.  The third time Appellant called Spagnola, he directed her to feed and clean up after Sherwood's cats.  *Id.*  When Spagnola arrived to feed the cats that evening, between approximately 8:00 and 8:30 p.m., Appellant was there, and she noticed

_____

[1]  18 Pa.C.S.A.  §§  4117(a)(2),(3),  903(c),  4906(a),(b)(1),  7512(a), 4904(a)(1), and 5101,  respectively.

cabinets in the home were open and different areas of the residence were in disarray. *Id.* at 38, 40-44. Appellant informed Spagnola that "they were planning to rob the house" in order to collect from his renter's insurance policy and avoid eviction. *Id.* at 42. He then asked Spagnola to return to the residence the following day and act as if she discovered the house had been burglarized. *Id.* at 44.

Following this encounter, Spagnola called the police and informed them of the anticipated staged break-in. *Id.* at 45-48. At approximately 9:40 a.m., on December 28, 2013, Officer Scott Dunlap of the Pocono Mountain Regional Police Department received a dispatch directing him to Appellant's residence for a suspected burglary. *Id.* at 67. Appellant informed Officer Dunlap that he was out of the home from 9:00 p.m. the previous evening until 9:00 a.m. that day and that his tools and a large, flat-screen television were missing. *Id.* at 68, 76. That same day, Appellant called ASI to report the claim. *Id.* at 175. On January 3, 2014, Appellant went to the Pocono Mountain Regional Police Department seeking the police report in order to provide said report to ASI. *Id.* at 104- 105. He informed Officer Mark Andersen that over $50,000.00 worth of home electronics and construction equipment were stolen. *Id.* at 107. Ultimately, he alleged to ASI that he lost in excess of $15,000.00 worth of property, but he could not provide proof of ownership. *Id*. at 184, 186. ASI denied Appellant's claim

based on his failure to provide necessary documentation supporting his claim and misrepresentation. *Id.* at 189-190.

On February 10, 2014, the Commonwealth filed an information charging Appellant with one count each of criminal use of communication facility, possession of an instrument of crime, criminal mischief, and intimidation of witnesses[2] and two counts each of insurance fraud, conspiracy, false reports, and unsworn falsifications to authorities at docket number CP-45-CR-126-2014.

Subsequent to the filing of said charges against Appellant, he sent a letter to DiMartino directing him to notarize and send new statements recanting the statements he and Sherwood gave to police during the investigation and discouraging DiMartino from showing up for court. *Id.* at 209-215. He further advised DiMartino not to speak with Spagnola unless it was to convince Spagnola to refuse to appear in court to testify against him. *Id.* at 215. Appellant enclosed with the letter a proposed statement written from DiMartino's perspective which read, in part, "[i]n no way, shape, or form did we conspire with or agree to file any false reports to police with [Appellant] before or after the burglary took place."[3] *Id.* at 216. At

---

[2] 18 Pa.C.S.A. §§ 907(a), 3304(a)(5), and 4952(a)(1), respectively.

[3] The letter was admitted into evidence and read verbatim for the jury during trial.

DiMartino's preliminary hearing, on March 5, 2014, DiMartino informed Officer Derek Metzger of the letter and its contents and turned it over to police custody.[4]   *Id.* at 203-205.  Following the discovery of the letter, the Commonwealth filed a second information, on May 21, 2014, charging Appellant with two counts of intimidation of witnesses and one count of obstruction of administration of law at docket number CP-45-CR-975-2014.

On July 8, 2014, Appellant stood trial on the charges at both docket numbers.[5]  On July 10, 2014, at the conclusion of the trial, the jury found Appellant guilty of two counts each of insurance fraud, criminal conspiracy, and false reports and one count each of criminal use of communication facility, unsworn falsification to authorities at docket number CP-45-CR-126-2014.[6]  At docket number CP-45-CR-975-2014, the jury found him guilty of obstruction of administration and not guilty on each count of intimidation of witnesses.  On September 15, 2014, the trial court, by two separate orders, sentenced Appellant to an aggregate term of 36 to 72 months'

---

[4] The Commonwealth charged both DiMartino and Sherwood with two counts each of criminal conspiracy.  They were both admitted into the Accelerated Rehabilitative Disposition program (ARD) and do not have appeals pending in this matter.

[5] The Commonwealth elected to join the two cases for trial pursuant to Pennsylvania Rule of Criminal Procedure 582.

[6] The jury found Appellant not guilty of intimidation of witnesses, and the Commonwealth withdrew the remaining charges on that docket number.

imprisonment.[7]    On September 25, 2014, Appellant filed post-sentence motions challenging the convictions on both docket numbers.[8]    The trial court entertained oral argument on the motions on December 29, 2014.  On January 29, 2015, the trial court denied Appellant's post sentence-motion by order and opinion.[9]    Thereafter, Appellant filed two timely notices of appeal

_____

[7] Specifically, the trial court sentenced Appellant to 12 to 24 months' imprisonment for each count of insurance fraud, to run consecutively; 6-12 months' imprisonment for false reports-fictitious reports, to run consecutively to the terms of imprisonment for insurance fraud; 12 to 24 months' imprisonment for criminal use of communication facility, to be served concurrently; 6-12 months' imprisonment for each of the following offenses false reports-falsely incriminating another, conspiracy to commit false reports, unsworn falsifications to be served concurrently; and the trial court imposed no penalty for Appellant's conviction for conspiracy to commit insurance fraud.  The trial court separately sentenced Appellant to 6 to 12 months' imprisonment for obstruction of administration of law, "to run consecutively to the sentences imposed in case No. 126 Criminal 2014 for a[n] aggregate sentence of 36 months [to] 72 months."  Trial Court Order, 9/15/14.

[8] Initially, Appellant's counsel filed a post-trial motion on September 11, 2014, which the trial court denied as premature on September 12, 2014. Additionally, Appellant filed several *pro se* motions following his trial, which were forwarded to his counsel pursuant to Pennsylvania Rule of Criminal Procedure 576(a)(4).

[9] We note the trial court initially scheduled argument on the motion for December 15, 2014.  Trial Court Order, 9/29/14.  Appellant moved for a continuance, which the trial court granted on November 12, 2014, and the trial court rescheduled the argument for December 29, 2014.  Trial Court Order, 11/12/14.

on February 27, 2015.[10]  We have *sua sponte* consolidated these appeals pursuant to Pa.R.A.P. 513.[11]

At 555 EDA 2015, Appellant raises the following issues for our consideration.

> [1]. Did the trial court abuse its discretion by not to [sic] setting aside the verdict as to [c]riminal [u]se of [c]ommunication [f]acility in that there was insufficient evidence to convict Appellant of the crime, where the Commonwealth failed to show that [] Appellant either filed a claim, requested a claim to be filed, or was part of an agreement of a conspiracy?
>
> [2]. Did the trial court abuse its discretion by not to [sic] setting aside the verdict as to [c]riminal [u]se of [c]ommunication [f]acility in that the verdict was against the weight of the evidence in that the Commonwealth failed to prove that [] Appellant either filed a claim, requested a claim to be filed, or was part of an agreement of a conspiracy?
>
> [3]. Did the trial court abuse its discretion by not to [sic] setting aside the verdict as to [i]nsurance [f]raud, in that there was insufficient evidence to convict [A]ppellant of the crime, where the Commonwealth failed to show that [] Appellant either filed a claim, requested a claim to be filed, or was part of an agreement of a conspiracy?

---

[10] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

[11] We will hereafter refer to CP-45-CR-126-2014 by Superior Court docket number 555 EDA 2015 and CP-45-CR-975-2014 by Superior Court docket number 557 EDA 2015.

[4]. Did the trial court abuse its discretion by not to [sic] setting aside the verdict as to [i]nsurance [f]raud, in that the verdict was against the weight of the evidence where the Commonwealth failed to prove that []Appellant either filed a claim, requested a claim to be filed, or was part of an agreement of a conspiracy?

[5]. Did the trial court abuse its discretion by not to [sic] setting aside the verdict as to [f]alse [r]eports, in that there was insufficient evidence to convict [A]ppellant of the crime, where the Commonwealth failed to show that [] Appellant either filed a claim, requested a claim to be filed, or was part of an agreement of a conspiracy?

[6]. Did the trial court abuse its discretion by not setting aside the verdict as to [c]onspiracy regarding [f]alse [r]eports to [l]aw [e]nforcement in that there was insufficient evidence to convict Appellant of the crime, where the Commonwealth failed to show that [] Appellant was part of an agreement of a conspiracy?

7. Did the trial court err when running Appellant's sentences concurrently for [f]alse [r]eport-[f]alsely [i]ncriminating [a]nother and [f]alse [r]eport when sentences should have merged?

Appellant's Brief (555 EDA 2015) at 5-6.

In Appellant's first four issues, he purports to challenge both the sufficiency and weight of the evidence supporting his convictions for criminal use of communication facility and insurance fraud. However, in each distinct argument section, he merely reproduces the identical argument. Therefore, we elect to address all four of these issues together. First, we address issues one and three to determine if the evidence was sufficient to support said convictions. We are bound by the following standard of review.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not reweigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact[,] while passing on the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Young*, 120 A.3d 299, 311 (Pa. Super. 2015) (citation omitted).

As noted, in issues one and three, Appellant argues there was insufficient evidence to convict him of insurance fraud and criminal use of communication facility. Appellant's Brief (555 EDA 2015) at 10, 16. The relevant statutes provide as follows.

**§ 4117. Insurance fraud**

**(a) Offense defined.**-- A person commits an offense if the person does any of the following:

…

- 9 -

(2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

(3) Knowingly and with the intent to defraud any insurer or self-insured, assists, abets, solicits or conspires with another to prepare or make any statement that is intended to be presented to any insurer or self-insured in connection with, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.

…

18 Pa.C.S.A. § 4117(a)(2), (3).

### § 7512. Criminal use of communication facility

**(a) Offense defined.—**A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

…

**(c) Definition. –** As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of

> signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

*Id.* § 7512 (footnote omitted).

Specifically, Appellant argues that he merely "inquire[d] about reporting a claim[]" and "did not provide any paperwork requested by the [i]nsurance [c]ompany to open a claim." Appellant's Brief (555 EDA 2015) at 10, 16. In essence, Appellant argues that because he never submitted formal paperwork in support of his claim of loss to ASI, he cannot be convicted of either offense. *Id.* at 16. For the following reasons, we disagree.

First, we note there is nothing in Section 4117 that requires a claim to be submitted in writing in order to satisfy the elements of the crime. 18 Pa.C.S.A. § 4117. Furthermore, at trial, the Commonwealth presented the testimony of Paula Johns, a special investigator with the insurance company. Johns became involved in this case because the policy was purchased December 12, 2013 and the loss was reported shortly thereafter on December 28, 2013. N.T., 7/8/14, at 173-174. She explained how ASI processes claims as follows.

> [The Commonwealth]:
>
> Q. Could you briefly explain what happens on an insurance claim when a claim is submitted against an insurance policy?

[Johns]:

A. Yes. You have a loss, whether it be a fire, natural, catastrophic, whatever, you call it in. A customer service rep gets it, gets the information from you. It's assigned to a staff adjuster, and if it needs an independent adjuster, which means someone in the field, or if that particular company has someone that lives in the area, an adjuster will contact you, go over the particulars, come out and do an inspection, gather all the pertinent information, gather all the pertinent documents from you, and then the process will continue on where determination and coverage and verification is done, and then payments are issued accordingly.

N.T., 7/8/14, at 172-173. She further testified, "this claim was called in on 12/28/2013 at 11:54 a.m." *Id.* at 175. She outlined her personal involvement with Appellant as follows.

[The Commonwealth]:

Q. Okay. And had you reviewed information [Appellant] provided with regard to the loss prior to speaking with him?

[Johns]:

A. Yes. I provided only what was called in to the customer service representative.

Q. And when you finally did speak with [Appellant], what did you say, and what did he say?

A. Introduced myself, let him know that I was working with the inside adjuster, requested to know what occurred in his own words.

Q. And what did he tell you?

A. He told me that he had roommates and that they were out of town and that he was away. He

- 12 -

talked about a girlfriend, and I asked if he was on the lease. And after several times requesting [he answer] that, he finally advised no. Then, he started talking about what items were taken, where these items were, where he was now having to stay because he had nowhere to stay.

…

A. And, as the conversation progressed, what did he say?

Q. He just wanted to know what he could do, how he could get paid, advised me that the claim rep had already advised him what needed to be done and that if he had any other questions to give me a call, but I needed the supporting documents.

…

Q. And do you know what amount he was claiming as lost or stolen or damaged?

A. During the course of several different conversations, an amount was given, yes.

Q. And what was that amount?

A. It was in excess of $15,000.[00.]

*Id.* at 184. Johns detailed further the items Appellant claimed were stolen and that Appellant was unable to furnish the required proof of ownership because "[h]e operates off the books." *Id.* at 186.

Based on the foregoing, Appellant's attempt to characterize his contact with ASI as "conversations about that policy" rather than as a claim is belied by the record. *See* Appellant's Brief (555 EDA 2015) at 10, 16. There is ample evidence that Appellant had numerous discussions with

representatives of ASI detailing the items he alleged where damaged or stolen and the amount of the alleged loss in an attempt to collect on the policy. *See*, *e.g.* N.T., 7/8/14, at 185. Moreover, in response to Appellant's actions, ASI sent an inspector to the residence on January 8, 2014. *Id.* at 187. Following the inspection, Appellant text-messaged pictures of a dresser and a window to Johns, claiming the dresser had been damaged during the course of the burglary. *Id.* at 188-189. Johns testified, "[t]he claim was denied for failure to provide the documents per the policy provisions and for misrepresentation." *Id.* at 190. Accordingly, we conclude the totality of Appellant's several interactions with ASI describing his purported losses, including having the residence inspected and sending images supporting such losses on his phone, sufficiently support a conviction for insurance fraud and criminal use of communication facility. Further, as noted by Johns, Appellant was unable to provide the necessary documents to have his claim paid because, by his account, he was not operating a legal business. *Id.* at 186. Therefore, we decline to conclude Appellant did not file a claim based on the fact that he "never submitted or never tried to submit the paperwork[.]" Appellant's Brief (555 EDA 2015) at 11,16.[12]

_____

[12] Appellant's sole challenge is that the Commonwealth failed to prove he filed a claim. Although he does not contest any other element, we nevertheless conclude, viewing the evidence in the light most favorable to the Commonwealth, sufficient evidence was presented to prove each element of the offenses. Specifically, the record abundantly demonstrates

*(Footnote Continued Next Page)*

We next review whether the trial court erred in denying Appellant's post-sentence motion challenging the weight of the evidence for insurance fraud and criminal use of communication facility.[13] A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **In re J.B.**, 106 A.3d 76, 95 (Pa. 2014) (citation omitted). "A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Weathers**, 95 A.3d 908, 910-911 (Pa. Super. 2014),

_(Footnote Continued)_ ───────────────

Appellant concocted the story of the burglary, reported it to the police, and attempted to collect on his insurance policy by reporting the fabricated burglary to ASI. Therefore, the evidence was sufficient to convict Appellant of his first count of insurance fraud. **See** 18 Pa.C.S.A. § 4117(a)(2); **Young**, **supra**. Further, Officer Anderson testified that Appellant asked him "for a copy of the incident report[,] so he could provide [ASI] with that." N.T., 7/8/14, at 105. Moreover, Appellant told Spagnola to "act as if there was a robbery[]" in order to have his false burglary account appear more credible. **Id.** at 44. Accordingly, the Commonwealth presented sufficient evidence to establish Appellant solicited another to make or prepare a statement intended to be presented to ASI in support of his false claim. **See** 18 Pa.C.S.A. § 4117(a)(3); **Young**, **supra**. As Appellant does not dispute that he text-messaged images to ASI and made phone calls regarding his policy, there was sufficient evidence, _a fortiori_, to sustain Appellant's conviction for criminal use of communication facility. **See** 18 Pa.C.S.A. § 7512.

[13] As we acknowledged at the outset, Appellant relies on the same argument in support of his challenge to the weight of the evidence, _i.e._, that he never filed a claim, and therefore, that the verdicts for insurance fraud and criminal use of communication facility are against the weight of the evidence. **See** Appellant's Brief (555 EDA 2015) at 13-14, 19-20.

*appeal denied*, 106 A.3d 726 (Pa. 2015), *citing **Commonwealth v. Diggs**,* 949 A.2d 873, 879 (Pa. 2008). Therefore, on appeal, the reviewing court "reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." ***Id.*** "A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (citation and internal quotation marks omitted). "[O]nly where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (emphasis in original; citation omitted), *cert. denied*, ***Morales v. Pennsylvania***, 135 S. Ct. 1548 (2015).

The trial court provided the following analysis as to weight of the evidence supporting the insurance fraud convictions.

> Analyzing this motion under the weight of the evidence standard, [Appellant] again argues that he did not submit a proper claim. However, the testimony showed that he contacted the insurance company on the same morning he reported the burglary. His contact with them was to report his burglary claim. He made an initial contact to report his loss, and then followed up with Ms. Johns' inquiries. She testified extensively about her investigation of [Appellant]'s claim and she referred to it as such. The jury was free to deem this testimony credible. The result was just, and it does not shock the court's sense of justice.

Trial Court Opinion, 1/29/15, at 10.[14]

Regarding Appellant's criminal use of communication facility conviction, as with his sufficiency challenge, he does not contest that he used a telephone to have several conversations with ASI and send them images of his alleged damaged property. The trial court noted, "[b]oth the sufficiency of the evidence and weight of the evidence analyses detailed above [with respect to insurance fraud] apply here." *Id.*

The trial court reviewed the evidence at trial and determined that the result does not shock one's sense of justice, and we will not disturb its finding. *See Weathers*, *supra*. Moreover, it cannot be said that the trial court's denial of Appellant's post-sentence motions based on the facts and inferences of this case rises to a palpable abuse of discretion. *See Morales*, *supra*. Accordingly, Appellant's challenges to his convictions for insurance fraud and criminal use of communication facility based on the weight of the evidence fail.[15]

_____

[14] The trial court authored a 1925(a) opinion with respect to one issue Appellant raised in his 1925(b) statement that had not been previously raised in the trial court and which Appellant has since abandoned on appeal. Trial Court Opinion, 3/29/15, at 1-2. In addressing the remainder of Appellant's issues, the trial court relied on its previously issued January 29, 2015 opinion explaining its denial of Appellant's post-sentence motion.

[15] Within his argument sections challenging the sufficiency and weight of the evidence of insurance fraud, Appellant attempts to challenge his conviction for criminal conspiracy to commit insurance fraud. Appellant's Brief (555 EDA 2015) at 11, 14. Appellant advances, for both arguments, "[t]here was
*(Footnote Continued Next Page)*

Appellant next avers that there was insufficient evidence to convict him of false reports. In particular, Appellant argues there was insufficient evidence to convict him because he "did not say who he had thought had done the burglary." Appellant's Brief (555 EDA 2015) at 23. The relevant statute provides as follows.[16]

> **§ 4906. False reports to law enforcement authorities**
>
> **(a) Falsely incriminating another.—**Except as provided in subsection (c), a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.

18 Pa.C.S.A. § 4906(a).

At trial, Officer Dunlap provided the following testimony.

> [The Commonwealth]:
>
> Q. And did [Appellant] make any statements to you – any further statements in regards to Ms. Sherwood and/or Mr. DiMartino?

---

*(Footnote Continued)* ────────────

no evidence that Appellant agreed with or asked anyone to submit information needed to open a claim with [ASI]." ***Id.*** As there is no pertinent discussion of the facts of the case or citation to legal authority, we conclude this portion of Appellant's arguments are waived. ***See Commonwealth v. Delvalle***, 74 A.3d 1081, 1086-1087 (Pa. Super. 2013) (concluding the appellant waived review of his claim where the entire argument consisted of three sentences, and appellant failed to cite a single case or develop a factual argument).

[16] Appellant was also convicted of a second count of false reports, 18 Pa.C.S.A. § 4906(b)(1); however, he does not argue there was insufficient evidence to sustain that conviction.

[Appellant]:

     A. Yes. He stated they still have a key. And as I said before, as I'm going around doing my investigation and talking to him at the same time, he tried to lead me to believe that maybe they were responsible for this. When I asked him why, he said ["]because they owe me money. They still got a key. You know, they could have done all this.["]

N.T., 7/8/14, at 84.

Appellant argues that he "was answering the inquiry of the officer when [Appellant] was asked if he knew who may have done it, and he only responded that the person may have done it." Appellant's Brief (555 EDA 2015) at 23. Instantly, Appellant's argument is untenable. Viewing the evidence in the light most favorable to the Commonwealth, the jury was free to credit the testimony of Officer Dunlap that Appellant indeed implicated his roommates in the crime. *See Young, supra*. Moreover, the overwhelming evidence presented at trial demonstrates that Appellant reported to police a burglary that did not occur. Therefore, the Commonwealth presented sufficient evidence to prove Appellant knowingly reported false information to police with the intent to implicate his roommates in the crime. *See* 18 Pa.C.S.A. § 4906(a). As such, this issue fails.[17]

_____

[17] We further note the fact that Appellant's statements were in response to police inquiry does not obviate his culpability. *See Commonwealth v. Hlatky*, 626 A.2d 575, 582 (Pa. Super. 1993) (observing, with respect to Section 4906(b)(1), "[t]he statute does not differentiate between false reports of an incident given by an individual in response to police

*(Footnote Continued Next Page)*

In his sixth issue, Appellant argues that there was insufficient evidence to prove criminal conspiracy to commit the offense of false reports to law enforcement. Appellant's entire argument follows. "There was no evidence there was an agreement or conspiracy to give a false report. As there is no evidence of an agreement or conspiracy to give a false report, there is insufficient evidence to convict for this crime." Appellant's Brief (555 EDA 2015) at 24. Aside from reproducing the conspiracy statute, Appellant provides no citation to legal authority, nor does Appellant in any meaningful way discuss the facts of the case as applied to the law.

Pennsylvania Rule of Appellate Procedure 2119 provides that the argument section in each brief shall contain "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Because Appellant has failed to cite any case law or develop a factual argument in a substantive manner, Appellant has waived review of this issue. ***Delvalle***, ***supra***.

In Appellant's final claim of error on docket 555 EDA 2015, he challenges the sentences imposed for his criminal conspiracy and false reports convictions.[18] Appellant's Brief (555 EDA 2015) at 25. Specifically,

_____
*(Footnote Continued)* _____

questioning from those spontaneously given without police inquiry[]"), *appeal denied*, 644 A.2d 1200 (Pa. 1994).

[18] The trial court sentenced Appellant to 6 to 12 months' imprisonment for his conviction for false reports-fictitious reports to law enforcement; a
*(Footnote Continued Next Page)*

Appellant claims that criminal conspiracy, false reports-fictitious reports, and false reports-incriminating another should have merged. *Id.* A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. *Commonwealth v. Williams*, 980 A.2d 667, 672 (Pa. Super. 2009), *appeal denied,* 990 A.2d 730 (Pa. 2010). Although Appellant failed to raise this issue in his statement pursuant to Rule 1925, challenges to the legality of a sentence are non-waivable. *Commonwealth v. Raven*, 97 A.3d 1244, 1248 n. 7 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014). Our standard of review over issues pertaining to the legality of sentences is *de novo*, and our scope of review is plenary. *Commonwealth v. Batts*, --- A.3d ---, 2015 WL 5174241, *10 (Pa. Super. 2015)

The test for determining if crimes merge for sentencing follows.

### § 9765. Merger of sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

---

*(Footnote Continued)* ⸻

concurrent term of 6 to 12 months' imprisonment for false reports- falsely incriminating another; and a concurrent term of 6 to 12 months' imprisonment for conspiracy to commit false reports-fictitious reports to law enforcement.

42 Pa.C.S.A. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are met: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." *Commonwealth v. Jenkins*, 96 A.3d 1055, 1056 (Pa. Super. 2014) (citation omitted), *appeal denied*, 104 A.3d 3 (Pa. 2014).

Instantly, this Court has repeatedly held that "[t]he crime of conspiracy … is separate and distinct from the underlying substantive crime." *Commonwealth v. Jacquez*, 113 A.3d 834, 838 (Pa. Super. 2015) (citation omitted). Therefore, "the crime of conspiracy does not merge with the substantive offense that is the subject of the conspiracy." *Id.* (citation omitted). Thus, the trial court did not err in sentencing Appellant on conspiracy and the underlying offense of false reports.

We turn now to assess Appellant's claims that his convictions for false reports should have merged. As noted, Appellant was convicted of two counts of false reports: false reports-falsely incriminating another and false reports-fictitious reports. To convict Appellant of false reports-falsely incriminating another, the Commonwealth must prove that Appellant "knowingly g[ave] false information to any law enforcement officer with intent to implicate another[.]" 18 Pa.C.S.A. § 4906(a). Whereas to be convicted of false reports-fictitious reports, the Commonwealth need establish that Appellant "report[ed] to law enforcement an offence or other

incident within [his] concern knowing that it did not occur." **Id.** 4906(b)(1).

As such, to be convicted of false reports-falsely incriminating another, the

Commonwealth must prove an element, *i.e.*, intent to implicate another,

that is not required for a conviction under Section 4906(b)(1). Likewise, a

conviction under Section 4906(b)(1) requires the Commonwealth prove a

defendant report an incident **knowing** it did not occur. Section 4906(a)

does not require a defendant report an incident knowing that it did not

occur, but only requires false information be provided to police with the

intent to implicate another. Therefore, the crimes have distinct elements

and do not merge. **See Jenkins**, **supra**. Accordingly, Appellant is not

entitled to relief on any of his claims on docket 555 EDA 2015.

We now turn our attention to Appellant's claims of error on docket

number 557 EDA 2015. Appellant asks us to consider the following three

issues.

> 1. Did the trial court abuse its discretion by not
> setting aside the verdict for the charge of
> [o]bstructing [a]dministration of [l]aw or [o]ther
> [g]overnmental [f]unction where there was no
> conviction for an unlawful act[,] where [A]ppellant
> was acquitted of the other charges in the criminal
> information upon which the obstructing
> administration of law or other governmental function
> charge was based?
>
> 2. Did the trial court abuse its discretion when it did
> not to [sic] set aside the verdict as to [o]bstructing
> [a]dministration of [l]aw or [o]ther [g]overnmental
> [f]unction, where there was insufficient evidence to
> convict [Appellant] of the crime, when an element of
> the crime was not met?

3. Did the trial court abuse its discretion by not setting aside the verdict as to obstructing administration of law or other governmental function, in that the verdict was against the weight of the evidence where the element of an unlawful act necessary for conviction was not proven?

Appellant's Brief (557 EDA 2015) at 5.

While purporting to raise three, distinct issues, Appellant advances only one argument. Appellant argues that "there is no unlawful act[,]" and therefore, the Commonwealth failed to prove an element of obstructing administration of law or other governmental function. Appellant's Brief (557 EDA 2015) at 9. Accordingly, Appellant maintains there was insufficient evidence of the crime and that the verdict was against the weight of the evidence. We first review Appellant's conviction for sufficiency, mindful of our standard of review. *See Young*, *supra*. The elements of the offense follow.

### § 5101. Obstructing administration of law or other governmental function

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act except that this section does not apply to flight by a person charged with a crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

- 24 -

The gravamen of Appellant's claim is that he cannot be convicted of obstructing administration of law because the jury found him not guilty of the two charged counts of intimidation of witnesses.  *See* Appellant's Brief (557 EDA 2015) at 8, 12-13, 15.  Therefore, according to Appellant, there was no unlawful act supporting the conviction.  *Id.*  Moreover, Appellant claims that because "DiMartino never opened the letter and did testify against [A]ppellant[,] the obstruction never took place."  *Id.* at 11.  We conclude Appellant's argument is without merit.

As explained, Appellant sent DiMartino a letter from prison telling DiMartino that the police cannot force DiMartino, Sherwood, or Spagnola to appear for court to testify.[19]  N.T., 7/8/14 at 210-211.  He wrote to DiMartino, "[y]ou need to recant on those statements.  Write new ones[.] … I need a statement from you and [Sherwood]… You need to say you don't know what happened there and that [Appellant] had tools there." *Id.* at 211-212.  The letter also suggested DiMartino refuse to testify.  Specifically, Appellant wrote, "[t]he best thing after these statements is no one show up for court.  Remember you can't get in trouble.  They only scare people into doing that.  Give me your number so we can talk further.  Don't talk to [Spagnola] unless convincing her not to show up at court." *Id.* at 215

_____

[19] Appellant does not dispute that he sent DiMartino a letter.  *See* Appellant's Brief (557 EDA 2015) at 11.

(some capitalization omitted). The trial court provided the following analysis to address Appellant's argument.

> Here, the statute in question does not require a conviction of any specific crime, only that [Appellant] impair administration of law through some "unlawful act." [Appellant] staged a burglary in order to collect renter's insurance, and he encouraged his roommates, [] DiMartino and [] Sherwood to participate in the plan. He reported the false burglary to the police and to his insurance company, made false written statements, and encouraged his roommates to provide false statements as well. While [Appellant] was acquitted of two counts of [i]ntimidation of [w]itnesses, … the jury was instructed that [o]bstruction could be proven if [Appellant] directed a witness, Harley DiMartino, to provide a false statement to police with intent of obstructing justice. It is not a statutory requirement that he be *convicted* or any other for the [o]bstruction conviction to stand. The jury had ample evidence to find [Appellant] directed [] DiMartino to provide a false statement in order to obstruct [Appellant's] prosecution for committing insurance fraud.

Trial Court Opinion, 1/29/15, at 7-8 (internal citation omitted, italics in original).

We agree with the trial court that, viewing all the evidence at trial in the light most favorable to the Commonwealth, sufficient evidence was produced to enable the jury to find that Appellant was guilty of obstructing the administration of justice. **See Young**, **supra**. Furthermore, the fact that DiMartino testified against Appellant is of no consequence to the charge because "section 5101 includes intentional, albeit unsuccessful attempts to influence, obstruct, or delay the administration of law." **Commonwealth v.**

***Snyder***, 60 A.3d 165, 177 (Pa. Super, 2013) (citation omitted), *appeal denied*, 70 A.3d 811 (Pa. 2013). The evidence adduced at trial indisputably demonstrates Appellant intentionally undertook to have DiMartino and Sherwood provide false statements to police and to refuse to testify against him in order to obstruct or delay the administration of law. Accordingly, Appellant's first two issues fail.

Similarly, in Appellant's third issue, he argues, "there is no evidence of an unlawful act, therefore the verdict is a shock to one's conscience." Appellant's Brief (557 EDA 2015) at 15. The trial court evaluated the evidence at trial and concluded, "[t]he weight of the evidence also supported [Appellant's] conviction." Trial Court Opinion, 1/29/15, at 7-8. Our review reveals that the trial court properly exercised its discretion in determining the conviction was not against the weight of the evidence, and we will not upset the trial court's determination. ***See Weathers***, ***supra***; ***Morales***, ***supra***.

Based on the foregoing discussion, we conclude all of Appellant's issues are either without merit or waived. Accordingly, we affirm the trial court's September 15, 2014 judgments of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/21/2015</u>