J-S15011-15

2015 PA Super 66

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEVIN ADOLFO JACQUEZ | |
| Appellant | No. 1231 MDA 2014 |

Appeal from the Judgment of Sentence June 19, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003170-2013

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

OPINION BY LAZARUS, J.:                    **FILED APRIL 06, 2015**

Kevin Adolfo Jacquez appeals from the judgment of sentence imposed by the Court of Common Pleas of Berks County following his conviction for conspiracy to commit burglary,[1] theft by unlawful taking (M3),[2] conspiracy to commit theft by unlawful taking,[3] and receiving stolen property.[4]  After careful review, we affirm.

The trial court summarized the facts of this case as follows:

_____

[1] 18 Pa.C.S. §§ 903(a)(1), 3502(a)(2).

[2] 18 Pa.C.S. § 3921(a).

[3] 18 Pa.C.S. §§ 903(a)(1), 3921(a).

[4] 18 Pa.C.S. § 3925(a).

On the morning of April 4, 2013, Antonio Fernandez arrived at the store he owns and manages, La Esquina Famosa at 1300 North 10th Street in the City of Reading, and discovered its contents strewn across the floor. Fernandez had closed the store around 10:30 p.m. the previous night, and the door was still locked the next morning. He noticed that one of the ceiling panels had been moved, and that the items on a shelf underneath the panel were positioned, "as if somebody had stepped on there." Fernandez investigated the ceiling panel and noticed a large hole leading to the upstairs apartment. Fernandez also recognized that numerous items were missing, including a bank envelope, cigars, cigar wrappers, cigarettes, a water jug filled with change, and other store merchandise.

Fernandez called the police, and at approximately 7:50 a.m., Officer James Yeasted arrived and spoke with Fernandez. Yeasted saw [Jacquez] standing outside the store; [Jacquez], holding two black garbage bags, was next to a nearby door landing to stairs to an apartment. Yeasted learned that [Jacquez] lived in an apartment above the store with his girlfriend, who was the only individual who had keys. [Jacquez] stated that they had been moving out of the apartment the night before, and that he had returned that morning to move additional items.

[Jacquez] granted them permission to look around inside. In the corner of the main room, Yeasted observed an empty water jug identical to the one missing from the store. Inside the kitchen stove, there was a black backpack containing Fernandez's laptop, loose change, and some other items. Inside a closet, the carpet was lifted up and a tile underneath was broken. Beneath the tile, the loose floorboards could be removed, and you could see down into the store below. The resulting hole was approximately two feet by one-and-a-half feet.

Fernandez also came up to the apartment, and he identified multiple items that were sold in his store. Fernandez recognized [Jacquez] because he came into the store almost daily, where he would buy cigars and random food items. [Jacquez's] girlfriend would come into the store to purchase cigarettes. Outside on the sidewalk, Fernandez found a bag containing cigar wrappers and store-related paperwork that had been taken. The bag also contained construction materials, evidently from the hole put in the floor between the store and apartment.

Criminal Investigator Joseph Snell joined the investigation of the apartment later that morning. He testified as to a strange conversation with [Jacquez] regarding some of the purported evidence:

Q:     Did you speak to him while the search was being conducted, before or after?

A:     While the search was being conducted I asked him, I said are those your bags? Did you guys use these bags to pack? Because he told me they were moving out the night before. And the girlfriend of his also stated that they left around like 11:30 was the last run and the place was locked up.

I pointed out the bags, is this any of the items that you guys were using to pack. No. The water jug. I asked [Jacquez] is that your water jug? He's like no. I was here early. I got here in the morning. I had to move it, too, because I wanted to see if the store was open, he told me.

Q:     He moved the water jug to see if the store was open?

A:     Yes.

. . .

Q:      How about the items in the kitchen . . .?

A:     Okay. I questioned [Jacquez] about this. I asked him if those were his, if he noticed those items. He said they weren't his items. I asked him if he touched any of the items. He stated that he took a drink out of the Sprite.

Q:     The green item on the right-hand side?

A:     Yes, but he had no explanation why those items were in there.

[Jacquez] was also unable to explain bags recovered within the apartment that contained other items stolen from the store.

Jacquez indicated that Philip Nieves had been one of several people to help them move out of the apartment the previous evening. Subsequent forensic testing revealed fingerprints belonging to both [Jacquez] and Nieves on several items that had been stolen from the store.

Trial Court Opinion, 9/29/14, at 2-4.

On June 19, 2014, after a two-day trial, a jury convicted Jacquez of the above-referenced offenses. The same day, the court sentenced Jacquez to 18 to 120 months' incarceration for conspiracy to commit burglary, followed by 6 to 12 months' incarceration for theft by unlawful taking (M3).[5]

Jacquez filed a post-sentence motion on June 25, 2014, which the trial court denied the following day. This timely appeal followed, in which Jacquez raises the following issues for our review:

1. Whether the trial court erred in sentencing Jacquez on both conspiracy to commit burglary and theft by unlawful taking when a person convicted of burglary and theft by unlawful taking could not be so sentenced pursuant to 18 Pa.C.S. § 3502(d), rendering the sentence imposed illegal.

2. Whether the evidence presented at trial was sufficient to establish the charges of conspiracy to commit burglary and theft by unlawful taking as mere access to the point of entry and/or knowledge of the crime is insufficient to establish the charges?

Brief of Appellant, at 6.

Jacquez asserts that his sentence is illegal and unconstitutional. Accordingly, our scope of review is plenary, and our standard of review is *de novo*. *See Commonwealth v. Brougher*, 978 A.2d 373, 377 (Pa. Super. 2009) (challenge to legality of sentence); and *Commonwealth v. Bullock*, 913 A.2d 207, 212 (Pa. 2006) (challenge to constitutionality of statute).

_____

[5] The court was in possession of a pre-sentence investigation report at the time of sentencing.

Jacquez's argument focuses on section 3502 of the Crimes Code, which provides, in relevant part:

**§ 3502 Burglary**

*\*\*\*\**

**(d) Multiple convictions.** – A person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

18 Pa.C.S. § 3502(d).

As section 3502(d) makes clear, a person who commits burglary and theft by unlawful taking (M3) after the burglarious entry, may not be sentenced for both offenses. However, in the instant matter, Jacquez was found guilty of *conspiracy* to commit burglary and theft by unlawful taking (M3). Because the trial court determined that a conviction for conspiracy to commit burglary did not implicate the prohibition against multiple convictions under section 3502(d), it imposed separate sentences for each offense.

Jacquez asserts that the failure to include a conspirator to burglary in the sentencing exemption of section 3052(d) constitutes a violation of equal protection under the 14th Amendment to the United States Constitution.[6]

---

[6] Because Jacquez has failed to engage in an analysis of the four factors required by **Commonwealth v. Edmunds**, 586 A.2d 887 (Pa. 1991), we are precluded from considering whether the statute violates the equal protection clause of the Pennsylvania Constitution.

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law." *Commonwealth v. Shawver*, 18 A.3d 1190, 1194 (Pa. Super. 2011) (citation omitted).

Jacquez cites *School Districts of Deer Lakes and Allegheny v. Kane*, 345 A.2d 658 (Pa. 1975), for the proposition that a party attacking the constitutional validity of a statute shoulders a heavy burden of proof, as legislative enactments are presumed constitutionally valid. Citing *Eisenstadt v. Baird*, 405 U.S. 438 (1972), he also recognizes that he must show that no rational basis existed to exempt conspirators from section 3502(d).

Despite this recognition, Jacquez fails to explain why it is irrational to treat conspirators and burglars differently for purposes of sentencing. Rather, he simply concludes, "no rational basis exists to exclude the conspirator to burglary from the sentencing exemption of [section] 3502(d)." Appellant's Brief, at 16.

"The crime of conspiracy . . . is separate and distinct from the underlying substantive crime." *Commonwealth v. Ritter*, 615 A.2d 442, 444 (Pa. Super. 1992). Furthermore, the crime of conspiracy does not merge with the substantive offense that is the subject of the conspiracy. *Commonwealth v. Miller*, 364 A.2d 886, 888 (Pa. 1976). In light of these well-settled principles, of which the General Assembly was surely aware, its

decision not to extend to conspirators the same lenity that it extended to burglars, and those who attempt to commit burglary, through section 3502(d) appears to reflect legislative intent. Even if this were not the case, "a court cannot supply an apparent omission in a statute even though it appears that the omission resulted from the [L]egislature's mere inadvertence or failure to foresee or contemplate a case in question." *Palmosina v. Laidlaw Transit Co., Inc.*, 664 A.2d 1038, 1039 (Pa. Super. 1995) (citation omitted).

"A legislative enactment is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Commonwealth v. Mockaitis*, 834 A.2d 488, 497 (Pa. 2003). Because Jacquez has not met the burden of establishing that imposing different sentences on defendants who commit conspiracy to commit burglary and those who commit burglary offends the Constitution, he is not entitled to relief on this claim.

Jacquez next argues that there was insufficient evidence to support his convictions for conspiracy to commit burglary and theft by unlawful taking.

Where an appellant challenges the sufficiency of the evidence, this Court "must determine whether the evidence and all reasonable inferences deducible therefrom, when viewed in the light most favorable to the verdict-winner . . . are sufficient to establish all elements of the crime charged beyond a reasonable doubt." *Commonwealth v. Rakowski*, 987 A.2d 1215, 1217 (Pa. Super. 2010) (quoting *Commonwealth v. Parker*, 957

- 7 -

A.2d 311, 317 (Pa. Super. 2008) (citations omitted)). Further, "the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Abed*, 989 A.2d 23, 26 (Pa. Super. 2010) (citations omitted). "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Id*. at 26-27.

"A person is guilty of conspiracy with another person . . . to commit a crime if with the intent of promoting or facilitating its commission, he agrees with such other person . . . that they . . . will engage in conduct which constitutes such crime." 18 Pa.C.S. § 903(a)(1). Here, the Commonwealth charged Jacquez with conspiring to commit burglary, defined in relevant part as entering, with intent to commit a crime, "a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S. § 3502(a)(2).[7]

The evidence established that Fernandez arrived at his store on the morning of April 4, 2013, and discovered merchandise strewn on the floor. He noticed that a ceiling tile had been moved and, upon further inspection, discovered a hole in the ceiling opening directly into Jacquez's apartment.

---

[7] In his brief, Jacquez does not discuss theft by unlawful taking or conspiracy to commit theft by unlawful taking.

Fernandez called police, who saw Jacquez coming down from the upstairs apartment carrying two black trash bags. Jacquez told officers that he had moved out of the apartment the day before and came back to retrieve the rest of his belongings. He stated that several people helped him move, including Nieves.

Jacquez allowed police into the apartment where they found several items from the ground-level store including a water cooler jug that had previously been half-filled with coins and a laptop computer.

At some point, Fernandez saw Jacquez discard a black trash bag into the dumpster. When police retrieved the bag, they found a bank deposit bag from the store, bills addressed to the store, cigar wrappers and construction tools. Further investigation revealed Jacquez's fingerprints and Nieves' palm print on the items.

"Circumstantial evidence may provide proof of [a] conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa. Super. 2005). The evidence cited above was sufficient, if believed, to establish that Jacquez conspired to commit a burglary at La Esquina Famosa.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015