J-A26033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIR WRIGHT | : | |
| | : | |
| Appellant | : | No. 3479 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004980-2018

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED FEBRUARY 28, 2022**

Amir Wright (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his jury convictions of attempted murder[1] and related charges for the shooting of Michael Tucker.  On appeal, he contends that a detective's testimony, that he received information from an unnamed source that led him to identify Appellant as a suspect, violated both the rule against hearsay and the Confrontation Clause,[2] and constituted plain error on the face of the record justifying relief even absent an objection at trial.  In addition, Appellant asserts the sentence imposed for his conviction of attempted murder is illegal.

_____

[1] 18 Pa.C.S. §§ 901, 2502.

[2] U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]").

Because we agree the trial court imposed an illegal sentence,[3] we vacate the judgment of sentence and remand for resentencing. In all other respects, we affirm.

The relevant facts underlying Appellant's conviction are as follows. Shortly after midnight on May 9, 2018, Michael Tucker was riding his bicycle on his way home from work when he stopped at the Great Taste Chinese restaurant on Woodland Avenue in Philadelphia. N.T., 3/19/19, at 98-99. As he was leaving the restaurant, he "had a few words" with a man he later identified as Appellant. *Id.* at 100. Tucker and Appellant had exchanged a "few words" on a prior evening when Appellant was blocking the entrance to the restaurant. *Id.* at 100-01. Tucker described their May 9th encounter as follows:

> [Appellant] looked familiar to me from the last incident we had. So I kindly asked him, . . . Do you remember me? And . . . he said, Yeah, I remember you. And I told him, . . . We gotta stop meeting like this or we going to have a fucking problem. And those were my exact words.
>
> And he spoke backwards to me and it was a . . . fair little exchange back and forth. [Then h]e walked off towards the corner.

*Id.* at 103. Tucker saw Appellant "dip[ ] out of eye view and behind [a] wall." *Id.* at 104. At that point, Tucker began to ride his bike home. *Id.*

---

[3] Both the trial court and the Commonwealth agree that this matter should be remanded for resentencing. *See* Trial Ct. Op., 2/25/21, at 12-13; Commonwealth's Brief at 22-23.

Less than a minute later, Tucker observed Appellant "coming out" from behind the wall and saw "[g]unshot flashes[.]" N.T., 3/19/19, at 105. The first shot he felt was in his abdomen. *Id.* at 106. Tucker was shot five times in all — in his abdomen, chest, back, arm, and finger. *Id.* at 108-09. The shooter fled, and Tucker was able to call 911 and his mother. *Id.* at 110-11. Tucker was hospitalized for approximately four weeks due to his injuries. *Id.* at 111.

An acquaintance of Tucker, Demetrius Haley, was in the restaurant on May 9th when Tucker walked in. N.T., 3/19/19, at 65-66. When Haley left, he saw Tucker arguing with another male outside the restaurant. *Id.* at 66. The argument never got physical, and it ended when Tucker rode away on his bicycle. *Id.* at 68. As Haley turned and started to walk across the street, he heard gunshots. *Id.* Haley took cover behind a van until the gunshots ended. *Id.* at 70. He then saw the male Tucker had been arguing with running down the street. *Id.* at 71. Although he did not observe the shooting, Haley stated Tucker and the male were "the only two people that [were] out there, besides" himself. *Id.* at 78.

Philadelphia Police Detective Robert Conway was assigned to the case. *See* N.T., 3/20/19, at 9. Although the police initially had no suspects, a week after the shooting, Detective Conway received "some information" that

prompted him to show a photograph of Appellant to Haley.[4] *Id.* at 11. Haley told the detective Appellant "resembles the guy[; t]he shooter could be him." *Id.* at 13. When Detective Conway asked Haley how confident he was that the person in the photo (Appellant) was the shooter, Haley replied, "I would say it's him." *Id.*

Detective Conway then compiled a photo array of six photographs, including Appellant's, which was shown to Tucker on May 16, 2019, while he was still hospitalized. *See* N.T., 3/19/19, at 117-18; N.T., 3/20/19, at 15-17. Tucker positively identified Appellant as the person who shot him.[5] N.T., 3/19/19, at 120-21. Later, the police asked Haley to participate in a line-up identification. *See id.* at 91. Haley was unable to identify Appellant as the shooter, and, in fact, identified another man — not Appellant — as the person that most "resembled" the shooter. *Id.* at 92.

Appellant was subsequently arrested and charged with attempted murder, aggravated assault, possession of an instrument of crime, and two firearms offenses.[6] On March 14, 2019, Appellant filed a motion in *limine*

---

[4] Detective Conway explained that he showed Haley only one photograph because, on the night of the shooting, Haley told police he "would see" the man who shot Tucker "two times a week for the past two years," and that "he had his own run-in" with the man in the past. N.T., 3/20/19, at 13-14.

[5] At trial, Tucker testified that when he viewed the photo array, he was "[a] thousand percent" confident Appellant was the person who shot him. N.T., 3/19/19, at 121.

[6] *See* 18 Pa.C.S. §§ 2702(a), 907(a), 6106(a)(1), and 6108, respectively.

raising eight claims. **See** Appellant's Motion in Limine, 3/14/19, at 1-2 (unpaginated). Relevant herein, Appellant sought preclusion, as hearsay, of "[a]ny reference to a 'confidential source' and his/her alleged testimony that [Appellant] was responsible for the shooting involving [ ] Tucker." **Id.** at 1. However, at the March 18th hearing on the motion, Appellant — represented by the Defender Association of Philadelphia — informed the trial court that both attorneys were "basically in agreement" with all of the issues raised in the motion in *limine*, with the exception of one. N.T., 3/18/19, at 4. The disputed issue challenged the fact that Detective Conway showed only a single photo of Appellant to Haley. **Id.** Later that same day, the trial court entered an order denying Appellant's motion in *limine*.

Appellant's jury trial commenced the next day, March 19, 2019. The jury was shown surveillance video from inside the restaurant, which captured audio and video of the argument between Tucker and another man (presumably Appellant), but it did not capture the shooting.[7] **See** N.T., 3/19/19, at 74-77, 114-16, 147, 151-55. Haley was unable to positively identify Appellant as the shooter at trial. In fact, when asked to "look around [the] courtroom and see if . . . the person that . . . Tucker was arguing with" was there, Haley initially identified a man in the back of the courtroom, stating

_____

[7] The surveillance video is not included in the certified record on appeal. However, based on the testimony at trial, it does not appear that Appellant could be positively identified on the video. Indeed, there was testimony that the person arguing with Tucker was wearing a hat. **See** N.T., 3/19/19, at 154.

he "resemble[d] the guy." N.T., 3/19/19, at 66. Then, when asked if he recognized Appellant, Haley replied, "He resembles him." *Id.* Tucker, however, positively identified Appellant at trial as the person who shot him. *Id.* at 121.

Relevant to Appellant's issue on appeal, Detective Conway testified that, on the night of the shooting, the police did not have any suspects. N.T., 3/20/19, at 10. The Commonwealth's attorney then asked him if "anything change[d] in terms of a possible suspect" between May 9th and May 16th. *Id.* At that point, Appellant's counsel requested a "brief moment" to talk to the Commonwealth's attorney, which the court provided. *See id.* at 11. After an off-the-record discussion, the following exchange occurred:

> [Commonwealth's attorney:] So do you remember my question, Detective Conway?
>
> [Detective Conway:] I do. **During the investigation, I did end up receiving some information concerning this case.**
>
> [Commonwealth's attorney:] So based on the information that you received, what did you do with that information?
>
> [Detective Conway:] **As a result of that information, I pulled [Appellant's] photograph.** The photograph was taken in November 2014, some time.

*Id.* (emphases added). Detective Conway proceeded to explain that he showed the photograph of Appellant to Haley, who equivocally stated, "[he] resembles the guy[;] the shooter could be him." *See id.* at 11-13. We note, however, that the police did not recover a firearm or any clothing matching

- 6 -

the shooter's description upon a search of Appellant's residence. *See id.* at 24. Appellant did not testify at trial or put on any evidence in his defense.

On March 21, 2019, the jury returned a verdict of guilty on all charges. The trial court sentenced Appellant, on July 11, 2019, to a term of 15 to 30 years' imprisonment for attempted murder, followed by 7 years' probation for possession of a firearm without a license.[8] Appellant filed a timely post-sentence motion challenging the weight of the evidence supporting his convictions, and asserting his sentence was both illegal and an abuse of discretion. *See* Appellant's Post Sentence Motion, 7/17/19, at 1-6. The motion was denied by operation of law on November 14, 2019, and Appellant filed a timely notice of appeal on December 10, 2019. He later complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement.[9]

Appellant, still represented by the Defender Association of Philadelphia, raises the following issues on appeal:

> A. Did not a detective's testimony that he had no shooting suspect until he "received information" that led him to show only [Appellant's] photograph to an eyewitness violate the rule barring hearsay and the Confrontation Clause, and was not that violation exacerbated by the prosecutor's closing argument,

---

[8] The court determined the aggravated assault conviction merged for sentencing purposes, and imposed no further penalty for possession of an instrument of crime and carrying a firearm on a public street in Philadelphia.

[9] We note that, for reasons undisclosed in the record, this appeal sat dormant for more than a year on this Court's docket. Although the trial transcripts were forwarded in December of 2019, we did not receive the electronic certified record until February of 2021.

- 7 -

which relied on that testimony and independently violated the same rights?

B. Should not the prejudicial violation of substantial rights, plainly apparent on the record, entitle [Appellant] to relief based on plain error despite the failure to preserve the issues at trial?

C. Does not [A]ppellant's sentence of 15 to 30 years' incarceration for the aggravated offense of attempted murder causing serious bodily injury violate his due process and jury trial rights under the federal and state constitutions as well as controlling Pennsylvania law, as [A]ppellant was not charged with that offense and the jury, which was neither instructed nor asked to make findings on that offense, convicted him of attempted murder generally, which carries a statutory maximum sentence of 20 years[?]

Appellant's Brief at 3-4.[10]

We will address Appellant's first two claims together. Appellant insists Detective Conway's testimony — that he identified Appellant as a suspect after "receiving some information" — violated both the rule against hearsay and the Confrontation Clause. *See* Appellant's Brief at 16. He emphasizes that the trial court did not provide a limiting instruction to the jury either at the time the testimony was received or at the conclusion of trial.[11] *See id.* Furthermore, Appellant maintains this error was exacerbated when the prosecutor "reinforced this unlimited consideration" of the detective's

---

[10] Appellant included two additional issues in his Rule 1925(b) statement that he does not raise on appeal. *See* Appellant's Statement of Errors Complained of on Appeal, 2/16/21, at 2 (unpaginated) (challenging remarks in the Commonwealth's closing argument as violative of due process and asserting the trial court imposed a manifestly excessive sentence).

[11] Appellant also acknowledges, however, that trial counsel did not request such an instruction. Appellant's Brief at 16.

testimony during closing arguments. *Id.* at 17. Although the trial court later opined the testimony was admissible as an exception to the hearsay rule to explain the detective's course of conduct, Appellant asserts the jury's questions during its deliberation "make clear that it did not consider [this] testimony" for that **limited** purpose.[12] *Id.* Thus, he insists the "unlimited" admission of this testimony violated both the Pennsylvania Rules of Evidence and his constitutional rights, and, accordingly, he is entitled to a new trial. *Id.* at 24, 27.

Moreover, although Appellant concedes his trial counsel failed to object to either Detective Conway's testimony or the Commonwealth's closing argument, he argues he, nevertheless, is entitled to relief based on the "plain error" doctrine. **See** Appellant's Brief at 28, 38. Appellant contends that where, as here, "[i]t is plainly apparent from the record . . . that [he] was denied a fair trial due to two substantial violations of his rights[,]" this Court should have the authority to grant a new trial. **See id.** at 37. Although he recognizes the Pennsylvania Supreme Court abrogated the "plain error" doctrine in its 1974 decision, **Commonwealth v. Clair**, 326 A.2d 272 (Pa.

---

[12] The jury submitted two questions relating to Detective Conway's testimony. The first was, "How did the detective identify [Appellant] as a suspect[?]" Jury Question 1, 3/21/19, 11:00 am. Less than a half hour later, the jury sent the court another question: "Detective Conway advised that he got [Appellant's] pictures from information found in the investigation[.] Please provide information and transcript of Detective Conway's testimony[.]" Jury Question 2, 3/12/19, 11:25 am. The record does not reveal when or how the court answered these questions.

1974), Appellant maintains the Court has since permitted review of certain claims on appeal that were not raised in the trial court and insists "[t]his is a 'suitable' case for reexamining the strict waiver doctrine in criminal cases in Pennsylvania."  Appellant's Brief at 28, 32.

Preliminarily, we note that our standard of review of a trial court's evidentiary rulings is abuse of discretion.  **Commonwealth v. Rivera**, 238 A.3d 482, 492 (Pa. Super. 2020) (citation omitted), *appeal denied*, 250 A.3d 1158 (Pa. 2021).

> However, whether a defendant has been denied his right to confront a witness under the Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States *via* the Fourteenth Amendment, is a question of law, for which our standard of review is *de novo* and our scope of review is plenary.

**Id.** (citation omitted).

Nevertheless, as a prerequisite to appellate review, allegations of error must first be raised in the trial court.[13]  **See** Pa.R.A.P. 302(a).

> It is well-settled that to preserve an issue for review, a party must make a **timely and specific objection** at trial, and this Court will not consider a claim on appeal which was not called to the trial

---

[13] Two notable exceptions are challenges to the sufficiency of the evidence and the legality of a sentence.  **See** Pa.R.Crim.P. 606(A)(7) (challenge to sufficiency of the evidence supporting a conviction may be raised for first time on appeal); **Commonwealth v. Hill**, 238 A.3d 399, 407 (Pa. 2020) ("[C]hallenges to the legality of sentences are an exception to this general issue-preservation rule[;] an appellate court can address [a] challenge to the legality of [a] sentence even if that issue was not preserved in the trial court [and] an appellate court may raise and address such an issue *sua sponte*.").

court's attention at a time when any error committed could have been corrected.

***Commonwealth v. McFalls***, 251 A.3d 1286, 1293 (Pa. Super. 2021) (emphasis added; citation and quotation marks omitted). This is particularly true of challenges to the admission of evidence. "It is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal." ***Commonwealth v. Ramos***, 231 A.3d 955, 957 (Pa. Super. 2020) (citation and punctuation marks omitted). ***See also*** Pa.R.E. 103(a)(1)(A)-(B) ("A party may claim error in a ruling to admit . . . evidence only . . . if the . . . party[ ] on the record . . . (A) makes a timely objection, motion to strike, or motion *in limine*; and (B) states the specific ground, unless it is apparent from the context."). Indeed, "[t]he law is clear that issues, even those of constitutional dimension, are waived if not raised in the trial court." ***Commonwealth v. Cline***, 177 A.3d 922, 927 (Pa. Super. 2017) (citation and punctuation marks omitted). ***Accord Commonwealth v. Haughwout***, 837 A.2d 480, 486 (Pa. Super. 2003).

In the present case, it is undisputed that Appellant's trial counsel did not object to Detective Conway's testimony that he identified Appellant as a suspect after "receiving some information concerning" the case.[14] ***See*** N.T., 3/20/19, at 11. For this reason, the trial court found Appellant's challenge on appeal waived. ***See*** Trial Ct. Op. at 7-8.

---

[14] Nor did counsel object to the Commonwealth's discussion of the statement during its closing argument.

- 11 -

While acknowledging that the courts of this Commonwealth have adopted a "strict application of the waiver doctrine[,]" Appellant asserts that his appeal presents a "suitable" opportunity for reexamination of that doctrine. Appellant's Brief at 28. Indeed, Appellant emphasizes that trial courts have the discretion to grant a defendant a new trial *sua sponte* when the interests of justice require it. *Id.* at 34, *citing* **Commonwealth v. Powell**, 590 A.2d 1240 (Pa. 1991). Thus, he maintains "[t]here is no reason that appellate courts should deny themselves the same discretionary power . . . to vacate convictions based on considerations of justice and fairness." *Id.*

We conclude, however, that we are without authority to overturn nearly 40 years of case law upholding the Supreme Court's decision in **Clair**. The **Clair** Court explicitly rejected the "basic and fundamental error doctrine," which enabled a defendant to "seek reversal on alleged errors not properly raised below." **Clair**, 326 A.2d at 422-23. Although, as Appellant points out, there are limited exceptions to this rule, **see supra** n.13, those exceptions have been recognized by the Supreme Court, which, unlike this Court, has the authority to overturn or limit **Clair**. Furthermore, while the Supreme Court may have recently questioned the utility of our continued adherence to strict waiver rules, it has not wavered from its position in **Clair**. **See Commonwealth v. Veon**, 150 A.3d 435, 456 n.33 (Pa. 2016) ("There are appealing arguments for applying the plain error doctrine, and a considerable number of jurisdictions have done so, but we **emphatically** are not among them.") (emphasis added); **Commonwealth v. Hays**, 218 A.3d 1260, 1267

(Pa. 2019) (Chief Justice Saylor, concurring) (noting the "plain error doctrine" was not available to secure judicial review of appellant's waived claim, and in Chief Justice's view "the Court should not proceed to weaken the otherwise prevailing practice on the strength of advocacy . . . which makes no attempt to take all relevant interests into account.") (emphasis omitted). Thus, we reject Appellant's invitation to reexamine the strict waiver doctrine imposed by our Supreme Court.

Appellant also asserts that appellate courts should have "the same discretionary power" as trial courts "to vacate convictions based on considerations of justice and fairness." Appellant's Brief at 34. He emphasizes that in **Powell**, *supra*, the Supreme Court upheld a trial court's decision to grant a defendant a new trial *sua sponte* "in the interest of justice." Appellant's Brief at 34. Accordingly, when, as here, legal issues are "plain and apparent on the face of the record," Appellant advocates that this Court should be competent to decide them. **Id.** at 35.

Appellant's reliance on **Powell** is misplaced. In that case, the defendant's attorney was sick on the morning of trial, and was replaced by substitute counsel, who had no familiarity with the case. **Powell**, 590 A.2d at 1241. Therefore, substitute counsel requested a continuance, which the trial court denied. **Id.** Substitute counsel then stated, on the record, that "he was unprepared and had not met with the client and for that reason did not believe that he could competently represent" the defendant. **Id.** The court, however, refused to grant a continuance. **Id.** Moreover, although the

defendant advised the court he wanted a jury trial, the court "'persuaded' [him] to waive his right to a jury trial[.]" *Id.* The defendant was convicted of burglary and related charges that same day. *Id.* at 1240-42.

Thereafter, the trial court, *sua sponte*, granted the defendant a new trial "in the interest of justice." *Powell*, 590 A.2d at 1241. The Commonwealth appealed to this Court, which affirmed the trial court's ruling. *Id.* The Supreme Court granted allocatur review to consider, *inter alia*, "whether the granting of a new trial under the rubric of 'in the interest of justice' is a proper use of a trial court's discretionary powers[.]" *Id.* at 1240-41. In concluding that it was, the *Powell* Court opined:

> It is the **trial judge's** review of the conditions and activity surrounding the trial which leaves him or her in the best position to make determinations regarding the fairness of the process and its outcome. It is apparent, therefore, if a **trial court** determines that the process has been unfair or prejudicial, even where the prejudice arises from actions of the court, it may, in the exercise of its discretionary powers, grant a new trial "in the interest of justice."

*Id.* at 1243 (emphases added). The Court further explained: "This concept of 'in the interest of justice' is merely a recognition of the trial court's discretionary power to ensure the fairness of the proceedings during the adjudicatory stage." *Id.*

The ruling in *Powell* is distinguishable from the present case for two reasons. First, it was the **trial court** in *Powell* that first determined the proceedings were unfair. The *Powell* Court did not recognize the authority of an **appellate court** to consider, *sua sponte*, whether a defendant received a

- 14 -

fair trial. Second, the unfairness of the proceedings in *Powell* resulted from the trial court's "own conduct," which "compromised [the defendant's] right to adequate legal representation." *Id.* at 1245. Indeed, substitute counsel properly requested a continuance, knowing he was unprepared for trial. *See id.* at 1241.

Conversely, in the present case, our review of Appellant's claim is precluded not by trial court's error, but by **trial counsel's** failure to object to Detective Conway's testimony. It is well-settled that, generally, claims asserting the ineffective assistance of counsel "are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims **should not be reviewed upon direct appeal**."[15] *Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (emphasis added). The *Holmes* Court recognized two limited exceptions to the general rule: (1) in "an extraordinary case where the trial court, **in the exercise of its discretion**, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted[;]" or (2) when the defendant raises "multiple, and indeed comprehensive, ineffectiveness claims[,]" which the court, "**in its discretion** and for good cause shown," determines post-

_____

[15] We note that, in its October 2021 decision, *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), the Supreme Court held that claims of ineffective assistance of **post-conviction collateral counsel**, may be raised for the first time on appeal following the denial of post-conviction collateral relief. *Id.* at 401-02.

verdict review is warranted, and the defendant waives his right to PCRA review. *Id.* at 577, 578 (emphasis added and footnote omitted). Notably both exceptions fall "within the discretion of the trial judge" and neither apply here. *See id.* at 563.

Furthermore, Appellant's assertion that his right to relief is "plainly apparent from the record" — despite the lack of objection by trial counsel — implies that trial counsel was ineffective *per se*. However, he ignores two crucial facts. First, trial counsel sought to preclude reference to Detective Conway's "confidential source" by filing a pretrial motion in *limine*. However, at the hearing on the motion, trial counsel informed the court that the attorneys were "basically in agreement" on several matters, including this one. *See* N.T., 3/18/19, at 4. There was no further discussion of the matter, or any statement concerning the scope of the attorneys' agreement. *See id.* at 4-8.

Second, during Detective Conway's testimony, trial counsel asked for a "brief moment" to speak with the Commonwealth's attorney when the attorney asked Detective Conway if "anything change[d] in terms of a possible suspect" between May 9th and May 16th. N.T., 3/20/19, at 10-11. After a brief, off-the-record discussion, trial counsel thanked the court, and Detective Conway was permitted to answer the question. *Id.* at 11. Thus, trial counsel's actions, at the very least, imply counsel has some basis for not objecting to the testimony at trial. The determination of whether trial counsel had a **reasonable basis** for failing to do so is best left for collateral review. *See*

*Holmes*, 79 A.3d at 576; *Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011) ("[G]enerally, the court should not glean from the record whether counsel had a reasonable basis for his action or inaction absent an evidentiary hearing, and that it is only in the most clear-cut cases that the reasons for counsel's conduct are apparent from the record.").

Therefore, we conclude trial counsel's failure to object to both Detective Conway's testimony and the Commonwealth's closing argument has waived Appellant's hearsay and Confrontation Clause challenges for our review. Although he may assert trial counsel's ineffectiveness in a timely post conviction collateral petition, he is entitled to no relief on direct appeal. Thus, Appellant's first two issues fail.

In his final claim, Appellant contends the maximum 30-year sentence imposed on his conviction of attempted murder is illegal. Appellant's Brief at 38. Our scope of review of a challenge to the legality of a sentence is "plenary, and our standard of review is *de novo*." *Commonwealth v. Jacquez*, 113 A.3d 834, 838 (Pa. Super. 2015).

Appellant was charged with, and convicted of, attempted murder. Pursuant to Section 1102(c) of the Crimes Code, which delineates the permissible sentences for murder:

> Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer **where serious bodily injury results** may be sentenced to a term of imprisonment which shall be fixed by the court at **not more than 40 years**. **Where serious bodily injury does not result**, the

person may be sentenced to a term of imprisonment which shall be fixed by the court at **not more than 20 years**.

18 Pa.C.S. § 1102(c). Thus, Appellant's maximum sentence of 30 years' imprisonment is permissible only if the victim suffered "serious bodily injury." *See id.*

In *Commonwealth v. Johnson*, 910 A.2d 60 (Pa. Super. 2006), this Court held that the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), required a jury determination of "serious bodily injury" before imposition of the 40-year maximum sentence under Section 1102(c): "The decision in *Apprendi* . . . confirms the principle that it is within the sole province of the jury to find those facts necessary to increase the maximum terms of imprisonment for a specific charge beyond a reasonable doubt." *Johnson*, 910 A.2d at 67. Accordingly, the *Johnson* Court concluded that the maximum sentence the trial court could impose in that case was 20 years' imprisonment. *Id.* at 67-68. The Court explained:

> Here, . . . (1) appellant was not charged with attempted murder resulting in serious bodily injury, (2) appellant was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence, and (3) the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder.

*Id.* at 67 (footnotes omitted). Consequently, the *Johnson* Court held the maximum sentence the trial court could impose, based upon the jury's verdict, was 20 years' imprisonment. *Id.* at 67-68. *Accord Commonwealth v. Barnes*, 167 A.3d 110, 118-20 (Pa. Super. 2017) (*en banc*) (consistent with *Johnson*, maximum 40 year sentence for attempted murder was illegal

where: (1) defendant was not charged with attempted murder resulting in serious bodily injury; (2) jury was not instructed to render on whether victim suffered serious bodily injury with respect to attempted murder charge, and (3) jury's verdict finding defendant guilty of aggravated assault causing serious bodily was irrelevant to attempted murder charge as inconsistent verdicts are permissible).

Appellant insists his case is "directly controlled by" our decisions in **Johnson** and **Barnes**. Appellant's Brief at 41. We agree. Here, Appellant was simply charged with attempted murder, and was not put on notice that the Commonwealth intended to invoke the 40-year maximum sentence at Section 1102(c). **See** Information, 7/12/18, at 1. Moreover, "the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder." **See Johnson**, 910 A.2d at 67. **See** N.T., 3/21/19, at 14-15 (trial court's instruction on attempted murder), 28 (jury's verdict). Accordingly, we are constrained to vacate the judgment of sentence, and remand for resentencing in accordance with Section 1102(c).[16] We note that both the trial court and the Commonwealth agree that resentencing is appropriate in this case. **See** Trial Ct. Op., 2/25/21, at 12-13; Commonwealth's Brief at 22-23.

---

[16] Because our disposition affects the trial court's overall sentencing scheme, we must vacate the entire sentence and remand for resentencing on all the charges. **See Johnson**, 910 A.2d at 68.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2022