J-S14036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :                 PENNSYLVANIA
                                  :
                v.                    :
                                  :
                                  :
ERIC MAGIC MCKENZIE           :
                                  :
              Appellant      :       No. 945 WDA 2021

Appeal from the Judgment of Sentence Entered February 25, 2020
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000457-2019

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED MAY 23, 202**

     Eric Magic McKenzie (McKenzie) appeals from the judgment of sentence imposed by the Court of Common Pleas of Armstrong County (trial court) after his jury conviction of four counts of Conspiracy to Commit Robbery and one count of Criminal Use of a Communication Facility.[1]  He challenges the sufficiency of the evidence and alleges prosecutorial misconduct.  We affirm.

     We take the following factual background and procedural history from the trial court's November 21, 2021 opinion and our independent review of the record.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903 (3701(a)(1)(i), (ii), (iv)) and 7512(a), respectively.

## I.

At trial, Kanisha Croyle, McKenzie's half-sister and a co-conspirator in this matter, testified on behalf of the Commonwealth. She testified that in April 2019, she, McKenzie and Willie Lunsford discussed and planned a potential "lick," *i.e.*, robbery of a drug dealer, via text messages. (*See* N.T. Jury Trial, 12/11/19, at 106-09). On April 18, 2019, she went to the home of a mutual friend, Ashley Poston, to do illegal drugs and, while there, met Charles Lloyd, a drug dealer. She agreed to sell drugs for him in exchange for free product. (*See id.* at 111, 114-22).

At approximately 3:00 A.M. on April 19, 2019, Croyle spoke with McKenzie from her home phone and identified Lloyd as the target of the "lick" because he was an easy target. She exchanged text messages with him and he and Lunsford agreed to pick her up to go rob Lloyd. (*See id.* at 123-28). Croyle texted Poston later that morning to confirm that Lloyd was still at the apartment, using the excuse that she wanted to bring him money from the drug sales she had made on his behalf. (*See id.* at 132-36).

Croyle went on to testify that McKenzie and Lloyd then picked her up at her apartment. When they reached the entrance of Poston's apartment building at approximately 9:30 A.M., she rang the buzzer, and when Poston opened the door, McKenzie and Lunsford jumped out from around the corner. (*See id.* at 136, 155-56). Lunsford then pointed a firearm at Poston and forced her up a flight of stairs to her apartment; Croyle pretended to be a

victim. Upon opening the apartment door, Lunsford ordered everyone to the ground. (*Id.* at 158). Lloyd attempted to stop the robbery by approaching Lunsford; Lunsford fired his weapon and shot Lloyd in the hand before fleeing the scene with McKenzie without taking any property. (*See id.* at 162-67).

At the conclusion of this direct testimony, defense counsel cross-examined Croyle extensively about her role in the robbery and her motivation to lie so she could get a lesser sentence. (*See id.* at 178-236, 246-251).

Pennsylvania State Police Trooper Michael Graham, who led the investigation, testified. He stated that by obtaining video footage from several cameras in the area, police were able to identify a vehicle owned by Ralph Stratton arrive at the scene shortly before the attempted robbery. (*See* N.T. Trial, 12/12/19, at 37). Ralph Stratton and his girlfriend, Linda Baker, testified that the vehicle had been loaned to McKenzie on the night before the incident. (*See* N.T. Trial, 12/10/19, at 51-53, 61).

Video surveillance showed McKenzie's girlfriend driving the vehicle on the morning of April 19, 2019, and McKenzie and Lunsford then approaching Poston's apartment building. (*See* N.T. Trial, 12/12/19, at 38-39, 41-43). Trooper Graham testified that the video surveillance showed McKenzie and Lunsford then running from the building with masks a short time later. Based on his training and experience, Trooper Graham testified that it appeared that Lunsford had a handgun in his pocket. (*See id.* at 44-45).

The prosecutor then asked the officer if Lunsford was "allowed" to have a firearm. Before Trooper Graham responded, counsel immediately re-phrased the question to whether Lunsford was licensed to carry a gun. (*See id.* at 45-48). Lunsford's counsel moved for a mistrial, arguing that the question was prejudicial because it implied Lunsford was prohibited from having a firearm due to a previous felony conviction. (*See id.* at 47). The court denied the objection because the question had not been answered and it did not create an inference of any other fact. (*See id.* at 47-48).

Trooper Graham's questioning continued:

Q: How was it then that you were able to identify [ ] McKenzie? I mean, you see the footage, you get a face, but how are you then able to identify who he actually is?

A: Through mainly Ralph Stratton and Linda Baker, their interview—that was our initial—how we got to identify him. A corporal that works with Beaver barracks was familiar with him.

Q: You went on a search for the vehicle?

A: Yes.

Q: Found the vehicle owner?

A: Yes.

Q: And that led you to [ ] McKenzie?

A: Yes.

(*Id.* at 49-50).

Counsel for McKenzie objected and moved for a mistrial on the basis that Trooper Graham's testimony was prejudicial because it insinuated that

McKenzie had a criminal record and had been arrested prior to this incident. (***See id.*** at 51). The trial court overruled the objection and denied the motion for a mistrial. (***See id.***).

At the conclusion of the testimony, McKenzie's counsel moved for a judgment of acquittal on the basis that the evidence was insufficient to establish an attempted or actual robbery. (***See id.*** at 95). The court denied the motion. (***Id.*** at 96). At the conclusion of trial, the jury convicted McKenzie of the above-stated charges.

On February 25, 2020, the court imposed an aggregate sentence of not less than ten nor more than twenty years' incarceration for the four counts of Conspiracy to Commit Burglary and imposed no further penalty. McKenzie timely appealed.[2] He and the court have complied with Rule 1925. ***See*** Pa.R.A.P. 1925.

## II.

McKenzie first challenges the sufficiency of the evidence to support his conviction.[3] He argues that there is no evidence that a robbery occurred or

---

[2] On May 5, 2021, McKenzie filed a *pro se* "Motion for Ineffective Assistance of Counsel and Motion to Withdraw Appearance," which the trial court treated as a first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The court granted the PCRA petition on July 20, 2021, reinstated McKenzie's appellate rights and gave him thirty days to file an appeal, which he did.

[3] Our standard of review of this issue is well-settled:

*(Footnote Continued Next Page)*

was contemplated, and that Croyle's eyewitness testimony was tainted because she was threatened into cooperating with the investigation and expected a benefit from testifying against him.

**A.**

"A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title[.]" 18 Pa.C.S. § 7512(a). Robbery is a felony. *See* 18 Pa.C.S. § 3701(b). To establish robbery as pleaded in this case, the Commonwealth must prove beyond a reasonable doubt that the defendant "in the course of committing a theft … (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; [or] … (iv) inflicts bodily injury upon another or threatens another with or

---

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (citation omitted).

intentionally puts him in fear of immediate bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(i), (ii), (iv).

"The crime of conspiracy ... is separate and distinct from the underlying substantive crime." *Commonwealth v. Jacquez*, 113 A.3d 834, 838 (Pa. Super. 2015) (citation omitted). To sustain a conviction for criminal conspiracy, the Commonwealth must prove beyond a reasonable doubt that "the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Knox*, 50 A.3d 732, 740 (Pa. Super. 2012) (citations omitted); 18 Pa.C.S. § 903(a)(1)–(2), (e).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

*Id.*; *see also* 18 Pa.C.S. § 903(g)(1) ("[C]onspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed **or** the agreement that they be committed is abandoned by the defendant and by those with whom he conspired[.]") (emphasis added). "Where the existence of a conspiracy is established, the law imposes upon a

- 7 -

conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." ***Commonwealth v. Fisher***, 80 A.3d 1186, 1192 (Pa. 2013).

## B.

McKenzie argues that the evidence was insufficient to establish conspiracy because there was no testimony that a robbery was either attempted or occurred. He also maintains that the eyewitness testimony proffered by Croyle was insufficient because she was a co-conspirator who was coerced into testifying and stood to receive a lesser sentence for her cooperation. He claims that, although the vehicle he borrowed from Stratton was identified by video footage at the scene, this was insufficient to establish that he drove the vehicle and committed the charged crimes. These arguments are not persuasive.[4]

Croyle testified at length that she, McKenzie and Lunsford discussed and planned to rob a drug dealer via text and phone calls, that once she identified Lloyd as an easy target, McKenzie and Lunsford picked her up in the Stratton

---

[4] We note that "questions regarding the reliability of the evidence received at trial [are] within the province of the finder-of-fact to resolve, and ... [our courts] will not, on sufficiency review, disturb the finder-of-fact's resolution except in those exceptional instances ... where the evidence is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." ***Commonwealth v. Brown***, 52 A.3d 1139, 1165 (Pa. 2012) (citation omitted).

vehicle, she texted Poston to ensure that Lloyd would still be at the apartment, and the three of them went to the home of Poston with the intent of robbing Lloyd. (*See* N.T. Trial, 12/11/19, at 106-09, 111, 114-36, 123-28, 133). Once inside, Lunsford pointed a gun at Lloyd and shot him in the hand as he attempted to stop the robbery. (*See id.* at 156, 162-67).

In addition to Croyle's testimony, Stratton and Baker testified that Stratton loaned McKenzie his vehicle, the same one that was identified in video footage. (*See id.* N.T. Trial, 12/10/19, at 51, 61; N.T. Trial, 12/12/19, at 37). Video surveillance footage showed McKenzie's girlfriend driving the Stratton vehicle and showed McKenzie and his co-conspirators walking from the car to Poston's apartment building immediately before the incident and then running from the scene with masks and an armed Lunsford shortly thereafter. (*See* N.T. Trial, 12/12/19, at 38-39, 41-48).

Viewing the record in the light most favorable to the Commonwealth, it establishes that McKenzie entered into an agreement to commit or aid in a robbery with Croyle and Lunsford via text and phone, with a shared criminal intent, and that an overt act was done in furtherance of this conspiracy. *See Knox*, *supra* at 740. Despite McKenzie's argument to the contrary, the conspiracy continued until the agreement to commit the robbery terminated, not upon its completion or attempt. 18 Pa.C.S. § 903(g)(1). Further, the jury was fully aware of any potential taint in Croyle's testimony, and it was within its province as factfinder to believe all, some or none of this evidence. *See*

*Brown*, *supra* at 1165; *Rayner*, *supra* at 1054.  Hence, we reject McKenzie's claim that the evidence was so patently unreliable that it was insufficient to support the guilty verdict.

**C.**

In his second issue, McKenzie argues that "the court erred in denying [his] motion[] for a mistrial" where "the District Attorney committed prosecutorial misconduct by insinuating that [McKenzie] had a prior criminal record in front of the jury."  (McKenzie's Brief, at 13, 15).[5, 6]  The Commonwealth maintains that this issue is waived and would not merit relief because this issue was decided previously by this Court in *Commonwealth v. Lunsford*, 2021 WL 2531151, unpublished memorandum, (Pa. Super. filed

_____

[5] It is well-settled that the award of a mistrial is an "extreme remedy" that may be granted "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Bryant*, 67 A.3d 716, 727-28 (Pa. 2013) (citations omitted).  We review the trial court's decision on whether to grant a mistrial for an abuse of discretion. *See id.* at 728.  An abuse of discretion will not be found unless the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* at 726.

[6] McKenzie also argues that the trial court erred in denying his co-defendant Lunsford's motion for a mistrial based on the question about whether Lunsford was "allowed" to own a gun. (McKenzie's Brief, at 13-15).  Not only is this issue waived for McKenzie's failure to raise it in his Rule 1925(b) statement, but also because Lunsford objected to this testimony, not McKenzie, and McKenzie did not preserve this issue by joining in the objection.

June 21, 2021) where McKenzie's co-conspirator raised the identical issue. We agree.

**1.**

It is axiomatic that "[w]here the trial court orders an Appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P.1925, any issue not contained in that statement is waived on appeal." ***Commonwealth v. Rolan***, 964 A.2d 398, 409 (Pa. Super. 2008) (citations omitted).

In this case, the trial court ordered McKenzie to file a Rule 1925(b) statement and he did so. McKenzie's statement raised issues of sufficiency of the evidence and the ineffectiveness of trial counsel and alleged that the Commonwealth "forced" witnesses to testify against their will. (***See*** McKenzie's Concise Statement of Errors Raised on Appeal, at 1-2). Importantly, he did not raise the issue he now raises here and, therefore, it is waived. ***See Rolan***, ***supra*** at 409.

Moreover, even if not waived, the issue would merit no relief.

**2.**

As noted by the Commonwealth, we previously addressed this exact issue in the appeal of Lunsford, his co-conspirator. ***See Lunsford, supra***. In that case, we addressed whether the trial court abused its discretion in denying a mistrial upon "the Commonwealth eliciting testimony from [Trooper Graham] that [Lunsford's] co-defendant[, McKenzie] was able to be located

by police due to the fact that he was a person well known to the local police in his hometown?" *Id.* at *2 (record citation omitted). Identical to the contention McKenzie is raising, "Lunsford argue[d] that a mistrial [was] warranted because Trooper Graham's testimony conveyed to the jury that [McKenzie] has a criminal history." *Id.* at *3 (record citation omitted). In denying this claim, the Court relied on ***Commonwealth v. Robinson***, 864 A.2d 460 (Pa. 2004), and ***Commonwealth v. Carpenter***, 515 A.2d 531 (Pa. 1986). It observed, in pertinent part:

> In [] ***Robinson***, ***supra*** , our Supreme Court reasoned that a mistrial was not warranted where a police officer with the youth division testified that he knew the defendant, where the defendant attended school, and where the defendant resided during certain time frames when defendant was a juvenile … [because] … there was no indication that [the officer] was familiar with [a]ppellant through the performance of his duties or that [a]ppellant's name was in the police files. …
>
> … [In] … ***Carpenter*** … , a witness, after identifying himself as a parole officer, testified about a conversation he had with the defendant. In ***Carpenter***, we reasoned that [a] mistrial was not warranted and that little, if any[,] prejudice accrued to appellant by th[e] witness' passing reference to his occupation as a parole officer.
>
> \* \* \*
>
> ***Robinson***, ***supra*** at 504-05 (emphasis in original).
>
> We find the instant matter [] analogous to ***Robinson*** and ***Carpenter***. Here, Trooper Graham testified that another officer was merely "familiar" with Lunsford's co-defendant, McKenzie; he did not suggest that the officer knew McKenzie through the performance of his duties or that he came across either defendant's name or alias in any police files. As recognized in ***Robinson*** and ***Carpenter***, there are an infinite variety of ways that an officer may be familiar with an individual aside from his

- 12 -

prior criminal activity. Thus, in order for the jury to conclude that a corporal's "familiar[ity]" with McKenzie meant that he had a criminal history, the jury would have to engage in gross speculation. Additionally, Trooper Graham explained that he was able to identify McKenzie "mainly" through his interviews with non-police witnesses. N.T. Jury Trial, 12/12/19, at 49. It cannot be said that Trooper Graham's passing reference to an officer's familiarity with McKenzie prevented the jury from weighing and rendering a true verdict ….

*Id.* at *4 (some citations and internal quotation marks omitted). McKenzie does not argue that **Lunsford**'s holding is inapplicable to his case, and upon our independent review, we conclude that it is controlling. Therefore, even assuming *arguendo* that McKenzie did not waive this issue, it would not merit relief.

Judgment of sentence affirmed.

Judge McCaffery joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2022